```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
_____

DAWNA YOUNG,                          )
                                      )
     Plaintiff,                       )
                                      )
v.                                    )    No. 19-cv-2313-TLP-tmp
                                      )
FEDEX EMPLOYEES CREDIT                )
ASSOCIATION; CITY OF MEMPHIS,         )
Various Divisions and Departments;    )
COUNTY OF SHELBY, Various             )
Divisions and Departments,            )
                                      )
     Defendants.                      )
_____

                    REPORT AND RECOMMENDATION
_____
```

Before the court is a motion to amend under Federal Rule of Civil Procedure 15 (ECF No. 17) by a *pro se* plaintiff proceeding *in forma pauperis*, as well as a motion for judgment on the pleadings (ECF No. 19) by defendant FedEx Employees Credit Association ("FECA").[1] Plaintiff Dawna Young initially filed a Title VII action against FECA and sought leave to proceed *in forma pauperis*, which the court granted. Within twenty-one days of FECA filing its answer, Young moved to amend her complaint under Rule 15, which permits amendment as a matter of course (if the pleading is one to which a responsive pleading is required) within twenty-

---

[1]FECA alternatively seeks summary judgment, but for ease of reference, the court refers to the motion as one for judgment on the pleadings.

one days after service of a responsive pleading. See Fed. R. Civ. P. 15(a)(1)(B). Because Young's complaint meets the requirements of Rule 15(a)(1)(B), the court recommends that her motion to amend be GRANTED.

As Young is proceeding *in forma pauperis*, the amended complaint falls within the screening requirement of 28 U.S.C. § 1915. See Matthews v. City of Memphis, No. 2:14-cv-02094, 2014 WL 3049906, at *1 (W.D. Tenn. July 3, 2014) (granting a Rule 15 motion to amend in an *in forma pauperis* action and dismissing the amended complaint pursuant to § 1915); see also Smith v. Washington, No. 2:18-cv-10736, 2018 WL 4030809, at *2 (E.D. Mich. Aug. 23, 2018) ("Section § 1915(e)(2) is applicable throughout the entire litigation process.") (quoting In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997)). For the reasons set forth herein, the court recommends that Young's complaint be DISMISSED pursuant to § 1915. As a result, the court recommends that FECA's motion for judgment on the pleadings be DENIED as moot.

## I. PROPOSED FINDINGS OF FACT

Young began working for FECA as a collector in February 2016.[2] According to the complaint, she began to experience discrimination

---

[2] This basic information about Young's employment, which she did not include in her complaint, comes from the EEOC charge FECA attached to its motion for judgment on the pleadings. (ECF No. 19-1, at 7.) While ordinarily during a § 1915 screening the court would not have the benefit of such a document if the plaintiff failed to provide it, in this case the EEOC charge is not only

based on her race and marital status[3] in February 2017. (ECF No. 17-1, at 2.) Young complains of unequal terms and conditions of employment and retaliation. (Id.) According to Young, she sent human resources a "Hostile Work Environment" email in March 2017. (Id. at 4.) Young states that although the HR department conducted an investigation, it never provided her with the results. (Id.) Young alleges she was asked about another employee in August 2017, but the complaint does not specify the subject matter of the conversation or provide any further details. (Id.) In her complaint, Young writes that in September 2017, "the harassment [became] intolerable and [she] went to EEOC," at which time an EEOC representative advised her not to file a charge against FECA. (Id.)

Young complains of an "absolutely horrible" work environment from November 2017 until she resigned in February 2018, during which time she received "excessive workloads" beginning in

---

essential to Young's claim but is also repeatedly referenced throughout the complaint. Accordingly, the court will consider the EEOC charge as being incorporated by reference in the complaint. See Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[3]Marital status is not a protected class under Title VII or the Tennessee Human Rights Act. See 42 U.S.C. § 2000e; Tenn. Code Ann. § 4-21-401(a)(1)-(2). Accordingly, the court considers only the allegations of race discrimination and retaliation in the analysis below.

December 2017. (ECF No. 17-2, at 2.) She then writes: "I informed my manager of the excessive workload, trash cans were being placed in my seat, other employees clocking me in before I arrived, unable to clock in when I got to work due to locking of the system." (Id.) In addition, the complaint includes suspicions that FECA employees called Young's work extension and pretended to be FECA members in order to bring down her Quality Assurance score. (Id. at 4.) According to Young, she recognized the voices as being those of her co-workers and acquaintances. (Id.)

Young's original and amended complaints also include a significant number of allegations unrelated to her employment. For instance, she alleges in her original complaint that from December 2017 to September 2018, someone entered her home on several occasions and removed items including her birth certificate, her children's birth certificates, her work badge, various documents, articles of clothing and a spare garage opener. (ECF No. 1-1, at 1.) Similarly, Young alleges that someone entered her home in February 2019, took her iPhone and removed pictures from the device before placing it back in her house. (Id.) In the original complaint, Young also writes: "I began to notice that my phone calls, multi-media messages and texts were being re-directed. Then I began to notice that I was not getting certain mail items or the items severely delayed this is when I enrolled in informed delivery

-4-

with USPS.com. I have also had several annoying, degrading, anonymous, spoofed phone calls as well." (Id.)

Young additionally recounts instances of contacting the police with complaints that were not taken seriously. (Id.) On two occasions, police officers told Young she was not at her assigned precinct. (Id.) On another occasion, police officers failed to provide her with a report number. (Id.) During the latter encounter, a police officer allegedly asked Young if she was under investigation and if her son's father had a girlfriend. (Id.) Young also contends she sent a complaint to the FBI regarding computer hacking in August 2018, to which the FBI never responded. (Id. at 1-2.) In her complaint, Young writes: "My last report was filed April 4, 2019 after I contacted yahoo about my passwords being changed and was advised that my computer had been hacked by Russians, back in June 2018 they stated Mexicans." (Id. at 2.) In addition, Young states that throughout 2018 and 2019 she noticed several white vehicles driving past her home. (Id.) Finally, she complains of false rumors labeling her as "a snitch" in her community, leading to public provocations. (Id.)

Young also provides a significant number of post-employment allegations in her complaint relating to FECA. She writes: "After [resigning] I began to experience retaliatory harassment through out public and private sectors. I began to notice the commanalities of social media friends in my approximate locations and private

-5-

matters discussed indirectly amongst strangers. Then it became apparent that on about August 2018 that my devices may be bugged, I attempted to get a forensics done on my devices but ran into constant obstacles." (ECF No. 17-1, at 4.) Young alleges that after her "constructive discharge," she "noticed the same female and male exiting [her] frequent business interactions." (ECF No. 17-2, at 1.) Young asserts FECA invaded her privacy by using some form of tracking on her social media accounts. (Id.) She complains of "privacy concerns and retaliatory harassment" with other employers after leaving her employment with FECA, as well. (Id. at 3.) Young implies that FECA conspired with other employers to continually harass her at other jobs. (Id.) According to the complaint, the conspiracy does not end there but rather extends to the Memphis Police Department and FBI. (Id. at 4.) Young states that FECA has financial ties to the FBI and the Memphis Police Department. (Id.)

Young complains of "[e]ntries into [her] home on various occasions, removing pots, cups, forks and spoons." (Id. at 5.) Finally, she claims "[o]vercharges from various stores resulted after my departure from the Credit Association." (Id.) These stores include Carter's, Kroger's and Subway. (Id.) Young states that these incidents began only after leaving her employment with FECA, implying that FECA is somehow responsible. (Id.)

Young's original complaint asserts a Title VII claim against FECA. (ECF No. 1, at 4.) The amended complaint provides additional allegations of wrongdoing against FECA and also names the City of Memphis and Shelby County as defendants. (ECF No. 17-1, at 3.) In addition to the Title VII claim, the amended complaint asserts claims pursuant to §§ 1981, 1983 and 1985. (ECF No. 17-2, at 1-5.)

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   Section 1915 Screening**

Pursuant to § 1915, in proceedings *in forma pauperis*, the court shall dismiss the case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). For *pro se* plaintiffs proceeding *in forma pauperis*, the screening process applies equally to original and amended complaints. See Matthews, 2014 WL 3049906, at *1. In the Sixth Circuit, an amended complaint supersedes the original and serves as the "legally operative complaint" in the matter. See Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000). In this case, Young appears to use her amended complaint only to supplement the allegations contained in the original, as the amended complaint does not name FECA as a defendant but names only the City of Memphis and Shelby County. For Young's benefit, the court will

consider the allegations in both the original and amended complaints for purposes of this § 1915 screening.

"In determining whether a complaint fails to state a claim, the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Ford v. Martin, 49 F. App'x 584, 585–86 (6th Cir. 2002) (citing Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998)). "To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Barnett v. Luttrell, 414 F. App'x 784, 786 (6th Cir. 2011) (internal quotation marks omitted). While courts liberally construe *pro se* arguments, even *pro se* complaints must satisfy the plausibility standard. Id.; see also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to pro se litigants has limits."). "The basic pleading essentials are not abrogated in pro se cases." Matthews, 2014 WL 3049906, at *3 (citing Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989)). "Courts 'have no obligation to act as counsel or paralegal' to pro se litigants." Id. (quoting Pliler v. Ford, 542 U.S. 225, 231 (2004)). "Courts are also not 'required to create' a pro se litigant's claim for him." Id. (quoting Payne v. Sec'y of Treasury, 73 F. App'x 836, 837 (6th Cir. 2003)).

"A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While the court must view the factual allegations in the light most favorable to the plaintiff, the court need not "accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted).

**B.   Title VII Discrimination & Hostile Work Environment Claims**

The complaint is unclear as to whether Young seeks to assert a Title VII claim for race discrimination or hostile work environment against FECA.[4] The following analysis addresses the viability of each claim in turn. Title VII proscribes employment discrimination "against any individual with respect to his

---

[4]FECA argues in its motion for judgment on the pleadings that the court lacks subject matter jurisdiction over Young's Title VII claims because she did not exhaust the administrative remedies available to her. The Supreme court has recently held that "Title VII's charge-filing instruction is not jurisdictional," but rather constitutes "a procedural prescription mandatory if timely raised, but subject to forfeiture if tardily asserted[.]" Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1846 (2019). Because the court finds that Young fails to state a claim under Title VII, the court does not reach the issue of exhaustion of administrative remedies.

-9-

compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). "The essential elements of a Title VII race-discrimination claim are: (1) that the plaintiff is a member of a protected group; (2) that he was subjected to an adverse employment action; (3) that he was qualified for the position; and (4) that either similarly situated, non-protected employees were treated more favorably or he was replaced by someone outside his protected class." Hood v. City of Memphis Pub. Works Div., No. 17-2869, 2018 WL 2387102, at *3 (W.D. Tenn. Jan. 8, 2018) (citing Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 363 (6th Cir. 2010)). In order to state a claim of race discrimination under Title VII, a plaintiff must plead facts from which the court can infer that the employer's wrongful conduct related to the plaintiff's race. See Williams v. USW, AFL-CIO, Local 7697, No. 1:09-cv-743, 2010 WL 909883, at *5 (S.D. Ohio Mar. 10, 2010); see also Hood, 2018 WL 2387102, at *3 ("Title VII does not protect against a generally abusive working environment."). Here, the complaint fails to allege that the conduct attributed to FECA related to Young's race. The complaint includes no allegations whatsoever regarding Young's race, let alone allegations of any disparate treatment based on her race. For this reason, Young fails to state a claim for race discrimination under Title VII.

To the extent that Young is trying to assert a hostile work environment claim under Title VII, the complaint likewise fails to state a claim. "To establish a prima facie case of a hostile work environment, a plaintiff must demonstrate that (1) she is a member of a protected class, (2) she was subjected to harassment, either through words or actions, based on her membership in the protected class, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment, and (4) there exists some basis for liability on the part of the employer." Parker v. Strawser Constr., Inc., 307 F. Supp. 3d 744, 757 (S.D. Ohio 2018) (citing Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008)). To plausibly allege a "hostile work environment" under Title VII, "a plaintiff must plead conduct that was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive, and that the plaintiff regarded it as such." Navarro-Teran v. Embraer Aircraft Maint. Servs., 184 F. Supp. 3d 612, 622-23 (M.D. Tenn. 2016) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Robinson v. Shelby Cty. Pub. Defender, No. 2:17-cv-02768, 2018 WL 3077804, at *4 (W.D. Tenn. June 21, 2018) (quoting Faragher v. City of Boca Raton, 524

U.S. 775, 788 (1988)). To state a claim for a race-based hostile work environment under Title VII, a plaintiff must allege some form of race-based harassment. See id. at *4-5; see also Farmer v. Cleveland Pub. Power, 295 F.3d 593, 605 (6th Cir. 2002) ("[A] racial or sexual hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race or gender.").

Young generally alleges a "hostile work environment" but offers few details about the actual conduct involved. She does, however, provide some allegations for the time period of December 2017 through February 2018. Young states that she received "excessive workloads" starting in December 2017. On at least one occasion, someone placed a trash can at her seat. Young also alleges that, on at least one occasion, another employee clocked Young into work early. Young states that in February 2018, she suspected co-workers and acquaintances of calling her extension and pretending to be FECA members in order to bring down her Quality Assurance score. She provides no specific factual allegations into any such occurrences. Even if the conduct alleged constituted severe and pervasive harassment sufficient to establish a hostile work environment, Young's claim would still fail for a much simpler reason: The original and amended complaints contain no allegations regarding Young's race or any race-based

discrimination or harassment attributable to FECA. This omission is fatal to Young's hostile work environment claim. See Robinson, 2018 WL 3077804, at *4-5. Accordingly, it is recommended that these claims be dismissed.

**C.   Title VII Retaliation Claim**

Young additionally asserts a Title VII claim of retaliation against FECA. "To state a claim of retaliation under Title VII, a plaintiff must allege that: (1) he acted in a manner protected by Title VII; (2) the defendant knew of this exercise of protected activity; (3) the defendant subsequently took an adverse action against him; and (4) the adverse action had a causal connection to the protected activity." Hood, 2018 WL 2387102, at *5 (citing Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)). "[T]here are two types of 'protected activity' for purposes of a Title VII retaliation claim: (1) 'oppos[ing] any practice made an unlawful employment practice' by Title VII, and (2) making a charge, testifying, assisting, or participating in an 'investigation, proceeding, or hearing' under Title VII." Id. (quoting 42 U.S.C. § 2000e-3(a)).

Young alleges three possible instances of engaging in a protected activity. First, Young sent a "hostile work environment" email to HR while employed with FECA. Second, Young went to the EEOC in September 2017, although she did not file an EEOC charge against FECA at that time. Third, Young filed an EEOC charge

against FECA in February 2019. Young's September 2017 interaction with the EEOC cannot serve as the basis for her retaliation claim because she fails to allege that FECA knew about it, that FECA took any adverse action against her, or that any purported adverse action had a causal connection to this activity. Young's February 2019 EEOC charge cannot serve as the basis for her retaliation claim because the "retaliatory harassment" alleged in the complaint began *before* she filed the EEOC charge. The "hostile work environment" email, even if it qualifies as an exercise of protected activity, cannot serve as the basis for Young's retaliation claim because she fails to allege any causal connection between her email and any adverse action attributable to FECA. The isolated incidents alleged to have occurred during her employment do not constitute adverse actions, nor are they purportedly attributable to FECA. Moreover, while Young sent the email in March of 2017, she did not resign until February of 2018, which, taken with the other allegations, lacks the requisite temporal proximity to state a claim of retaliation. See Robinson, 2018 WL 3077804, at *6; see also Barrow v. City of Cleveland, 773 F. App'x 254, 264 (6th Cir. 2019); Redlin v. Grosse Pointe Pub. Sch. Sys., 921 F.3d 599, 615 (6th Cir. 2019); Montell v. Diversified Clinical Servs., 757 F.3d 497, 505-06 (6th Cir. 2014); Mickey v. Zeidler Tool and Die Co., 516 F. 3d 516, 525 (6th Cir. 2008). Accordingly, it is recommended that this claim be dismissed.

**D.   § 1983 Claim**

Young asserts several § 1983 claims in her amended complaint, seemingly against FECA as opposed to the City and County defendants. "To successfully plead a Section 1983 claim, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." Conexx Staffing Servs. v. PrideStaff, No. 2:17-cv-02350, 2017 WL 9477760, at *2 (W.D. Tenn. Nov. 3, 2017) (citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)). "A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." Tahfs, 316 F.3d at 590 (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). Young's § 1983 claim against FECA fails because FECA is a private employer and not a state actor, and Young fails to allege that FECA took any action on behalf of the state. See Campbell v. PMI Food Equip. Grp., Inc., 509 F.3d 776, 783 (6th Cir. 2007) ("[S]ection 1983 does not . . . prohibit the conduct of private parties acting in their individual capacities."). Accordingly, it is recommended that Young's § 1983 claim against FECA be dismissed.

While Young's complaint does not facially assert a § 1983 claim against the City and County defendants, even if Young intended to do so, the complaint nevertheless fails to state a

claim against them. "Section 1983 creates a federal cause of action against 'any person' who deprives someone of a federal constitutional right while acting under color of state law." Red Zone 12 LLC v. City of Columbus, 758 F. App'x 508, 515 (6th Cir. 2019) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978)). "A city can be a 'person' for the sake of a § 1983 claim." Id. (citing Monell, 436 U.S. at 690). "But a municipality cannot be held liable under § 1983 on a *respondeat superior* theory—or, in other words, because it employs a tortfeasor." Id. (citing Monell, 436 U.S. at 691). Rather, a local government may be sued under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. "The 'touchstone,' then, is an 'official policy' that causes the alleged constitutional violation." Red Zone 12 LLC, 758 F. App'x at 515 (citing Monell, 436 U.S. at 691). A plaintiff can establish such a "policy or custom" by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Osberry v. Slusher, 750 F. App'x 385,

397 (6th Cir. 2018) (quoting Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)).

In the complaints, Young alleges that, on one occasion, she went to two police precincts to report that strangers had approached her children. Both precincts told Young she needed to report the incident at her assigned precinct. Young then went to her assigned precinct, where an officer said he would write up a report of the incident. Young asked for a report number, but the officer did not provide one. Several months later, Young called the police to report that her children's birth certificates were missing. An officer came to her residence but did not take a report. Young also mentioned suspicions regarding computer hacking on this occasion, which the officer apparently ignored. These allegations provide no basis to conclude that Young has sufficiently alleged a "custom or policy" for purposes of a Monell claim. See McGhee v. City of Memphis, No. 18-2404-JPM-tmp, 2018 WL 6380784, at *2 (W.D. Tenn. June 21, 2018). Accordingly, it is recommended that Young's § 1983 claim be dismissed.

**E.   § 1981 Claim**

Young also seeks to assert a claim under § 1981. "To state a claim under § 1981, a plaintiff must plead, among other things, that 'he belongs to an identifiable class of persons who are subject to discrimination based on their race' and that 'the defendant intended to discriminate against him on the basis of

-17-

race.'" Moniz v. Cox, 512 F. App'x 495, 500 (6th Cir. 2013) (quoting Amini v. Oberlin Coll., 440 F.3d 350, 358 (6th Cir. 2006)); see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982).

Young's complaint fails to state a claim under § 1981 because it does not contain any specific factual allegations of discrimination, let alone *intentional* discrimination, based on her race. Young's complaint designates race discrimination as the basis for her suit but fails to identify any actual instances of racial discrimination. Accordingly, Young's complaint fails to plausibly allege a § 1981 claim.

**F.   § 1985 Claim**

Young next attempts to assert a claim under § 1985 of conspiracy to deprive her of the right to equal protection. See 42 U.S.C. § 1985(3). "To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it." Estate of Smithers v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010) (citing Bartell v. Lohiser, 215 F.3d 550, 559 (6th Cir. 2000)). "In other words, there must be proof of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Bartell, 215 at 559–60).

Young's complaint fails to state a claim under § 1985 for the same reason it fails to state a claim under § 1981. The complaint

simply does not contain any specific factual allegations of any discrimination, let alone discrimination based on Young's race or class. Accordingly, Young's complaint fails to plausibly allege a § 1985 claim.

**G.   Subject-Matter Jurisdiction**

While *pro se* pleadings are liberally construed and held to a less stringent standard than one drafted by an attorney, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are so totally "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir.1999) (citing Hagans v. Lavine, 415 U.S. 528, 536–37 (1974)). Allegations of this nature lack "legal plausibility necessary to invoke federal subject matter jurisdiction ." Id. at 480. The court must be satisfied of its own jurisdiction to hear the claims presented and may address the lack of jurisdiction at any time during the course of an action. Campanella v. Commerce Exch. Bank, 137 F.3d 885, 890 (6th Cir. 1998); Franzel v. Kerr Mfg. Co., 959 F.2d 628, 630 (6th Cir. 1992). Where subject-matter jurisdiction is found to be lacking, dismissal is required. Fed. R. Civ. P. 12(h)(3). Even construing

Young's complaint in the most liberal light, the court submits that the allegations in the complaints against the City of Memphis and Shelby County are implausible and devoid of merit, and must be dismissed for lack of subject-matter jurisdiction.

### III. RECOMMENDATION

Based on the foregoing analysis, the court recommends (1) GRANTING plaintiff's motion for leave to amend; (2) DISMISSING the complaint pursuant to § 1915(e)(2); and (3) DENYING the motion for judgment on the pleadings as moot.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 17, 2019
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**